```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA

                          Alexandria Division

J.S. RAYDER, as Plan Trustee  )
     of the Capital Resource  )
     Liquidation Trust,       )
                              )
     Plaintiff,               )
                              )
          v.                  )     1:05cv1251 (JCC)
                              )
AHTNA GOVERNMENT SERVICES     )
     CORP.,                   )
                              )
     Defendant.               )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant's Motion for summary judgment and Defendant's Motion for partial summary judgment. For the reasons stated below, the Court will deny Defendant's Motions for summary judgment in full.

### I. Background

Plaintiff Capitol Resource Funding ("CRF"), a Virginia corporation, is in the business of factoring and accounts receivable financing. Defendant AHTNA Governmental Services Corporation ("AGSC"), an Alaska corporation, is in the business of government contracting. AGSC entered into a subcontract agreement with Management Assistance Concepts Corporation ("MACC"), a California corporation, to fulfill a Social Security contract. During the time period of this Social Security contract, MACC borrowed money from CRF and gave CRF an assignment

-1-

of its rights to the portion of the proceeds under the contract. On October 2, 2001, CRF sent AGSC a certified letter noting that all payments due on MACC invoices were to be sent to CRF. This assignment was acknowledged and accepted by AGSC on October 26, 2001. Subsequently, AGSC made payments to CRF, and CRF alleges some payments were erroneously made directly to MACC.

In January 2004, AGSC and MACC terminated their relationship. On March 17, 2004, CRF informed AGSC that it had not received a portion of the proceeds to which it was entitled under the contract and demanded payment on the outstanding invoices. On May 14, 2004, AGSC informed CRF that some payments were made directly to MACC. According to AGSC, this was the first notification of such payments.

On May 17, 2004, AGSC filed an action for declaratory relief in Alaska state court. CRF was not initially served in this matter. AGSC asserts that it was because AGSC and CRF continued to discuss and work through the payment and accounting issues relating to the MACC assignment and the subsequent involuntary bankruptcy petition that AGSC chose not to serve the summons and complaint on CRF.

An involuntary Chapter 7 liquidation petition was filed for CRF in Alexandria, Virginia on August 26, 2004. AGSC did not receive notice of the bankruptcy and did not appear in the matter. J.W. Rayder was appointed the Plan Trustee of the CRF

Liquidation Trust.  On October 18, 2005, Rayder filed an action against AGSC for breach of contract.  Rayder was served with a summons and complaint in the Alaska state court matter in December 2005, after the filing of the Virginia matter.

AGSC filed a motion for summary judgment in this Court on the grounds that Plaintiff has waived any payment, or, in the alternative, that the contractual defenses that allegedly apply to MACC also apply to Plaintiff.  Plaintiff also filed a motion for leave to file or assert a third-party claim against MACC.  These motions are currently before the Court.

## II.  Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996)(citations omitted).  In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant."  *Brock v. Entre Computer Ctrs.*, 933 F.2d 1253, 1259 (4th Cir. 1991)(citations omitted).

The very existence of a scintilla of evidence or of unsubstantiated conclusory allegations, however, is insufficient to avoid summary judgment. *Anderson*, 477 U.S. at 248-52. Rather, the Court must determine whether the record as a whole could lead a reasonable trier of fact to find for the non-movant. *Id.* at 248.

### III.  Analysis

Defendant AGSC's motion for summary judgment is predicated upon the grounds that CRF has waived its right to payment; or, in the alternative, that CRF is subject to contractual defenses that may be asserted against MACC. Defendant additionally moves for partial summary judgment with respect to Count III on the grounds that promissory estoppel is not a cognizable cause of action in the state of Virginia.  For the following reasons, the Court will deny Defendant's motion for summary judgment.

A.  <u>Whether CRF has waived its right to payment</u>

<u>          </u>Defendant ASGC first argues that CRF has waived its right to payment, and therefore, summary judgment should be granted with respect to all claims.  ASCG correctly cites the Uniform Commercial Code (adopted by Alaska) for the proposition that "the account debtor may discharge its obligation by paying the assignee [CRF] and may not discharge its obligation by paying the assignor [MACC]." ALASKA STAT. § 45.29.406 (2006).  However,

although Alaska has never addressed waiver in the context of the UCC, courts have consistently recognized that the assignor can discharge the debtor's obligation if the assignee knows about the payments and does not object. *See Warrington v. Dawson*, 798 F.2d 1533, 1539 (5th Cir. 1986)(holding "even though an account debtor is aware that a valid assignment has been made, if the account debtor continues to pay the assignor and the assignee does not object, the account debtor is not bound by the assignment"). Defendant argues that Plaintiff never objected to the payments ASGC made to MACC, therefore, these acts constitute a waiver and CRF is not entitled to payment. This Court disagrees.

  Plaintiff never contests Defendant's recitation of the law of assignment. Instead, in opposition to Defendant's contention that Plaintiff waived its right to payment, Plaintiff asserts evidence that CRF attempted to directly communicate with AGSC to address the problems of the payment, and AGSC refused to cooperate. (Pltf.'s Ex. 6, 9, 13). This alone is enough to survive summary judgment as it provides a genuine dispute to material fact as to whether Plaintiff CRF objected, but additionally, Plaintiff also assets the language of the certification form signed by Defendant for every purchase of a MACC invoice. In the certification form, Defendant affirms (128 times, nonetheless) that:

> Payor[ASGC] acknowledges that [CRF] has been assigned payment of the amounts due or to

> become due under these Invoices . . . Payor is to remit such payment to Capital Resource Funding . . . [and] Payment to any other address will not constitute payment of these invoices.

(Pltf's Exhibit 14). Plaintiff contends that this repeated acknowledgment of CRF's role by AGSC in addition to the fact that CRF required this certification must constitutes, at a minimum, an issue of fact as to whether CRF waived any payment.

This Court finds Plaintiff's position persuasive and concludes that a genuine dispute of material fact exists with respect to whether Plaintiff waived right to payment. Plaintiff's evidence that Defendant refused to communicate and cooperate with Plaintiff regarding these payments, coupled by the affirmative acknowledgment of the assignee relationship by AGSC leadership, are sufficient to constitute a dispute as to whether CRF waived payment, and as such, summary judgment is improper.

B.  <u>Whether CRF is subject to AGSC's contractual defenses</u>

Next, AGSC argues that CRF is subject to the contractual defenses that it may have asserted against MACC since it has proverbially stepped into MACC's shoes.  Particularly, Defendant asserts that recovery is barred due to inadequate consideration and a breach of good faith and fair dealing. Again, Plaintiff does not dispute Defendant's recitation of assignment law, but instead, asserts additional language from the

aforementioned certification signed by Defendant on numerous occasions:

> Payor[AGSC] confirms that the total amount due on the certification(s) is a valid amount and will be paid in full, without offset or deduction. . . Payor[AGSC] will not assert against CRF any defenses or claims that Payor[AGSC] may have against [MACC] with regard to these certifications or otherwise.

(Pltf.'s Ex. 14).

Defendant does not argue in its reply that the aforementioned contractual waiver of defenses is unenforceable, but only contends that CRF did not rely on the certification. Notably, Defendant fails to provide any citation or argument that stands for the proposition that CRF must show reliance for the contractual waiver to be valid. Nevertheless, even if it had, CRF introduced deposition testimony that an AGSC representative understood the endorsed certification to induce reliance by CRF, thereby introducing a genuine dispute of material fact as to whether CRF relied on the provision. (Pltf.'s Ex. 12).

This Court finds that the contractual waiver of defenses demonstrates an unambiguous representation that ASGC waives any contractual defenses that can be asserted against MACC, and therefore are unavailable as grounds to grant summary judgment. Furthermore, a genuine issue of material fact exists as to whether CRF relied on the contractual provision.

Accordingly, summary judgment based on ASGC's contractual defenses is inappropriate.

###  C.  Count III: "Detrimental Reliance"

Defendant further moves this Court for partial summary judgment as to Count III of the Complaint captioned "detrimental reliance."  Defendant requests summary judgment on this Count since it is based upon a theory of promissory estoppel, which is not a cognizable cause of action the in state of Virginia.

Common to theme, Plaintiff does not dispute that Virginia law does not recognize claims of promissory estoppel, but argues instead that Defendant is mistaken as its asserted cause of action. Plaintiff contends that Count III is based upon equitable estoppel, not promissory estoppel, which is cognizable under Virginia law, requiring Plaintiff to prove: (1) a representation; (2) reliance; (3) change of position; and (4) detriment.  *Princess Anne Hills Civic League, Inc. v. Susan Constant Real Estate Trust, et al.*, S.E. 2d 599, 603 (1992).  All of these elements are properly pled within Count III, and nowhere is there any mention of "promissory estoppel."  Clearly, this Court would have preferred that Count III be titled "Equitable Estoppel" as opposed to "Detrimental Reliance."  Alas, this Court finds Plaintiff's explanation satisfactory.[1]

---

[1] CRF submits that it captioned this count as "detrimental reliance" because that is the predominant concept of equitable estoppel.

Thus, Plaintiff's Count III properly plead the elements required for a successful claim of equitable estoppel, and accordingly, summary judgment is improper.

D. The Doctrine of "Comparative Innocence"

Last, Defendant briefly argues that, since CRF knew at the time of contracting that MACC was operating at a $300,000 deficiency, it should be held liable for the "losses caused."[2] In support of this proposition, Defendant cites *Bank of Pittsburgh v. Neal* which held "where one of two innocent parties must suffer, through the fraud or negligence of a third party, the loss shall fall upon him who gave credit." 63 U.S. 96, 111 (1860). In other words, "he who has put it within the power of the third person to commit the wrong must suffer the loss." *Sherwood Distilling Co., v. Peoples First Nat'l Bank & Trust Co.*, 193 F.2d 649 (4th Cir. 1952).

Defendant ASGC admits in its brief that it contributed to the loss by signing the invoices for improper amounts, but contends that Plaintiff CRF should bear the brunt of the "losses." This admission alone weighs strongly against partial summary judgment, and upon further examination of the record, this Court finds that a genuine issue of material fact exists as to whether it was CRF that "put it within the power" of MACC, and

---

[2] Defendant focuses primarily on the law behind the doctrine of comparative innocence, but provides very little for the law's application to the facts, summarily concluding that CFR is more responsible than AGSC.

as such should be responsible.  Both parties contracted with MACC and engaged in business with it for a profit.  But for ASGC (just as without CRF), arguably no fraud would have occurred.  Accordingly, it cannot be concluded that a reasonable trier-of-fact could not find that CRF was not responsible under the doctrine of comparative innocence, and as such, summary judgment will be denied.

### IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment and Defendant's motion for partial summary judgment as to Count III will be denied in full.

An appropriate Order will issue.


October 19, 2006                    _____/s/_____
Alexandria, Virginia                        James C. Cacheris
                                    UNITED STATES DISTRICT COURT JUDGE